IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v. | |
| DONALD F. HANKS;<br>JENNIFER SPANGLER ARNSTEIN;<br>ALICE B. HANKS;<br>DENNIS W. HOLLINGSWORTH,<br>Tax Collector of St. Johns County, Florida;<br>ROTHERWICK TRADE VENTURES;<br>AMSOUTH RETIREMENT SERVICES, INC.,<br>formerly known as RETIREMENT<br>ACCOUNTS, INC., Trustee;<br>VILLA DEL MAR HOMEOWNERS<br>ASSOCIATION, also known as<br>VILLA DEL MAR CLUSTER HOMES, INC.,<br><br>Defendants. | Civil No. 3:09-cv-00101-HES-HTS |

**PRETRIAL STATEMENT**

1. BASIS OF FEDERAL JURISDICTION.

26 U.S.C. §§ 7402, 7403; 28 U.S.C. § 1340, 1345.

2. CONCISE STATEMENT OF THE NATURE OF THE ACTION

This is a civil action commenced by the United States to reduce federal tax assessments to judgment and to foreclose the corresponding federal tax liens against three parcels of real property belonging to the taxpayer. The action also seeks, if necessary, to vacate transfers of two of the properties as fraudulent.

3. BRIEF GENERAL STATEMENT OF EACH PARTY'S CASE

*For the plaintiff United States of America*

The taxpayer, Donald F. Hanks, is indebted to the United States for unpaid federal income taxes for the years 1995, 1996, 1997, 1999, 2000, 2003, and 2005, in the total amount of $1,021,789.19, with accruals computed to January 31, 2011. The tax liabilities for all these years were properly assessed. For some of the years, assessments were based on third-party payer reports because the taxpayer, at the time an adherent to an anti-tax philosophy, failed to file income tax returns. Once the Internal Revenue Service began in 2002 to collect the liabilities it determined were due, the taxpayer filed delinquent federal income tax returns, some of which failed to report income from incentive stock options, and some of which overstated deductions. The IRS abated some of the original assessments based on the delinquent returns, and in some instances assessed deficiencies determined during audits. For the later years at issue (i.e. 2003 and 2005), the taxpayer filed returns but failed to report income from incentive stock options or stock sales, and also overstated deductions. For these years the IRS assessed the liabilities shown on the returns filed by the taxpayer and the deficiencies reflected in its audit results.

The IRS gave the taxpayer notice and demand for payment of all of the assessments, and federal tax liens have arisen against all the taxpayer's property and rights to property, including his interest in the three parcels of real property at issue here. One parcel is the location of the taxpayer's principal residence. (The address for this property is 1188 Ponte Vedra Boulevard, Ponte Vedra, Florida. The complaint includes an erroneous legal description of Donald Hanks' residence. The deed containing the correct legal description will be offered into evidence as Government Exhibit 22.) Notices of federal tax liens were properly recorded before the taxpayer transferred the other two parcels, one of them to his ex-wife, Alice Hanks, and one of them to his current wife, Jennifer Arnstein. These transfers were made subject to the pre-existing federal tax liens and, in any event, were both constructively and intentionally fraudulent.

*For the defendants Donald Hanks and Jennifer Spangler Arnstein*

The Defendant DONALD F. HANKS has resided at the same address, 1188 Ponte Vedra Boulevard, Ponte Vedra Beach, FL, since 1989. Defendant, JENNIFER SPANGLER ARNSTEIN has also resided at the same address since August 8, 2008. Defendant JENNIFER SPANGLER ARNSTEIN was married to Defendant DONALD F. HANKS on August 8, 2008 and although she has no title interest, by virtue of the marriage, her financial contributions, and her possession of the property she enjoys protections and property rights under the laws of Florida as it relates to Homestead.

The Defendant DONALD F. HANKS has been employed as a Pharmaceutical/Biotech Salesman for approximately thirty (30) years. He began working in that capacity with Amgen Pharmaceuticals ("Amgen") in 1989 until his employment with Amgen was terminated on May 23, 2007. Throughout his tenure at Amgen, Mr. Hanks' was successful and his compensation consisted of salary and incentive stock options. Since his termination Mr. Hanks has been

unemployed, under a doctors care, and has relied on his wife, Defendant, JENNIFER SPANGLER ARNSTEIN for assistance in meeting household and living expenses related to the Homestead the Plaintiff seeks to foreclose.

In 1996 Mr. Hanks became involved in an ugly contested divorce from his then wife Alice Hanks. As part of the marriage dissolution difficulties, Mr. Hanks was unable to obtain the signature of his spouse to joint tax returns. Unsure of what to do, Mr. Hanks did not file timely Federal income tax returns for 1994, 1995, 1996, 1997, 1998, and 1999, and certain tax returns that he did file were rejected due to the lack of a signature from his unwilling spouse. Notwithstanding the filing difficulties, Mr. Hanks continued to have substantial income withheld from his compensation as follows:

| | |
|---|---|
| 1994 - 17,773.92 | 2001 - 16,169.00 |
| 1995 - 16,756.00 | 2002 - 23,575.00 |
| 1996 - 14,492.11 | 2003 - 49,399.00 |
| 1997 - 16,082.53 | 2004 - 44,611.76 |
| 1998 - 13,384.52 | 2005 - 41,168.48 |
| 1999 - 17,398.00 | 2006 - 59,506.92 |
| 2000 - 13,059.00 | 2007 - 17,458.92 |

Based on tax returns filed by Mr. Hanks on May 1, 2002, the IRS subsequently abated a portion of the original assessments for the 1994, 1995, 1996, 1997, and 1999 tax years. On September 9, 2000, the IRS abated $126,356.00 of the original 1996 tax assessment of $128,800.00, as well as corresponding interest and penalties; and because of withholding credits, this abatement satisfied the original 1996 assessment in its entirety. At that time Mr. Hanks also had excess tax withholding which the IRS transferred to an "excess collections" account and which Plaintiff has yet to fully account for.

On October 21, 2002, the IRS abated $31,506.00 of the original 1999 tax assessment of $52,804.00, as well as corresponding interest and penalties. The United States' claim in this action for 1999 taxes is for the amount remaining after the October 21, 2002 abatement, plus accruals. Mr. Hanks acknowledged that he was not comfortable with the amounts reported on his 1999 return and has contested the liabilities in his Answer and herein.

Shortly after filing his delinquent tax returns in May 2002, Mr. Hanks contacted the IRS seeking to enter into an Installment Payment Agreement. The IRS accepted Mr. Hanks' payment proposal and entered into a payment agreement on July 2, 2002. The agreement included the 1999 year. IRS records for 1996 also reflect an Installment Payment Agreement and payments made.

The IRS contends that the Installment Payment Agreement with Mr. Hanks was "terminated" on August 14, 2006. However, other than a computer code entry, the Plaintiff has yet to produce any evidence that the Defendant DONALD F. HANKS was notified of the termination of the Installment Payment Agreement as required by law.

Notwithstanding to the "termination" code in the IRS's transcripts the IRS continued to provide "Annual Installment Agreement Statements" in 2007 to the Defendant, DONALD F. HANKS, after the purported "termination" in 2006.

The Plaintiff's designated Rule 30(b) witnesses could not explain direct inconsistenciesbetween the IRS Form 4340 (Certificate of Assessments) reflecting a termination of the Installment Payment Agreement in 2006 and the subsequent mailing of Installment Agreement Statements in 2007.

Defendant's legal contentions include:

(a) Plaintiff's action is barred as a matter of law based upon Plaintiff's failure to lawfully terminate an Installment Payment Agreement.

(b) Defendant JENNIFER SPANGLER ARNSTEIN's equitable and legal rights under Florida law property permit the Court to determine to what extent it should refuse or otherwise exercise discretion in ordering the foreclosure of the Federal tax lien, if such a lien, in fact, exists.

(c) Plaintiff has failed to establish the prerequisites necessary to create a valid tax lien. As such, absent a final ruling reducing the tax debt to a Judgment, foreclosure is not available to Plaintiff.

(d) Plaintiff has failed to properly credit Defendant DONALD F. HANKS' withholdings for 1996 resulting in an overstated liability. Further, Defendant's 1999 tax return incorrectly overstated gain on the sale of property resulting in an overstated liability.

(e) Donald F. Hanks incurred ordinary and necessary business and investment expenses in 2003 and 2005 which are deductible. Further IRS understated Donald F. Hanks basis in stock in 2005 resulting in an inflated gain.

(f) Defendant Donald F. Hanks is entitled to an additional alimony deduction with the amount of $200,000.00 for the year 1997.

(g) Defendant Donald F. Hanks is entitled to a setoff for damages, costs, and other expenses related to Plaintiff's unlawful collection activity.

*For the defendant Alice Hanks*

Alice Hanks has filed a motion seeking to be excused from participation at trial and did not participate in the preparation of this pretrial statement.

*For the defendant Dennis D. Hollingsworth, Tax Collector for St. Johns County, Florida*

The Tax Collector has filed a motion seeking to be excused from participation at trial and did not participate in the preparation of this pretrial statement. The United States acknowledges that the local real property tax debt is to be paid from the proceeds of sale prior to payment of the taxpayer's indebtedness.

*For the defendant Villa del Mar Homeowners Association, also known as Villa del Mar Cluster Homes, Inc.*

This defendant did not participate in the preparation of this pretrial statement.

4. A LIST OF ALL EXHIBITS TO BE OFFERED AT TRIAL WITH NOTATION OF ALL OBJECTIONS

See Attached Exhibit Lists

5. A LIST OF ALL WITNESSES WHO MAY BE CALLED TO TESTIFY AT TRIAL

*For the United States*

Revenue Office J.C. Slate (a pseudonym)
Former Revenue Agent Eric Tidwell
Revenue Agent Nikki Rothman
Advisor/Reviewer Brenda Combs
Donald F. Hanks
Jennifer Spangler Arnstein
Alice Hanks

*For the defendants Donald Hanks and Jennifer Spangler Arnstein*

John Hoopes (a pseudonym)
Donald F. Hanks
Jennifer Spangler Arnstein
Alice Hanks
Scott Adams
Revenue Office J.C. Slate (a pseudonym)
Former Revenue Agent Eric Tidwell
Advisor/Reviewer Brenda Combs
Advisor/Reviewer Anthony Altieri
Shahrokh Shalfouki

Witnesses listed by the United States

6. A LIST OF EXPERT WITNESSES INCLUDING, AS TO EACH WITNESS, A STATEMENT OF THE SUBJECT MATTER AND A SUMMARY OF THE SUBSTANCE OF HIS OR HER TESTIMONY

None.

7. STATEMENT OF MONEY DAMAGE CLAIMS

This is not an action for money damages.

8. A LIST OF ALL DEPOSITIONS TO BE OFFERED INTO EVIDENCE AT TRIAL

Party Admissions:
Slate
Tidwell
Combs
Altieri (all pursuant to Fed.R.Evid. 801(d)(2))

9. A CONCISE STATEMENT OF THOSE FACTS WHICH ARE ADMITTED AND WILL REQUIRE NO PROOF AT TRIAL

a. This civil action was commenced at the direction of the Attorney General of the United States and with authorization and at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States.

1995 INCOME TAX

b. Donald F. Hanks ("Hanks") did not timely file a federal income tax return for the taxable year 1995.

c. The Internal Revenue Service ("IRS") on February 8, 1999, made an assessment against Hanks in the amount of $127,451 for 1995 income tax, $27,874.75, as a penalty for late filing, $18,954.83, as a penalty for failure to pay tax, and $37,142.27, in interest accrued to that date.

d. On May 1, 2002, Hanks submitted to the Internal Revenue Service a Form 1040 and supporting forms, statements and schedules for 1995, an accurate copy of which is Government Exhibit 33.

e. Government Exhibit 33 has been marked by the IRS to show its corrections to computational and other minor errors, including filing status, and changing the amount of tax due from $82,054, as Hanks initially reported on the Form 1040, to $92,539.

f. The difference between the amount of 1995 income tax assessed by the IRS, $127,451, and the amount of 1995 income tax reported on the Form 1040 by Hanks, as corrected by the IRS, $92,539, is $34,912, and the IRS abated that amount of tax on July 8, 2002.

g. The amount of wage income determined by the IRS, as shown in Line 7 of the Form 1040 (Government Exhibit 33), is $324,511; this sum represents the amount of "wages, tips, and other compensation" (i.e. $106,777) listed in Box 1 of the Form W-2 prepared by Hanks' employer at the time, Amgen and subsidiaries ("Amgen"), plus the amount listed in Box 14 of the Form W-2 as disqualified stock options ($217,733.67).

h. On August 17, 2004, Hanks filed a second Form 1040 for 1995, along with supporting forms and schedules, an accurate copy of which is Government Exhibit 35.

i. The IRS accepted all of the new amounts listed on Hanks' second 1995 Form 1040 (Government Exhibit 35) as they differed from the corrected version of Hanks' earlier Form 1040 (Government Exhibit 33), except that the IRS did not accept the reduction of wage income to $106,777 reported on the later Form 1040 (Government Exhibit 35).

j. As a result of the accepted changes, the IRS abated tax in the amount of $4,763 on April 25, 2005, along with corresponding amounts of interest and penalties.

**1996 INCOME TAX**

k. Hanks did not timely file a federal income tax return for the taxable year 1996.

l. The IRS on February 8, 1999, made an assessment against Hanks in the amount of $128,800 for 1996 income tax, $28,577, as a penalty for late filing, $12,573.88, as a penalty for failure to pay tax, and $23,795.19, in interest accrued to that date.

m. On May 1, 2002, Hanks submitted to the IRS a 1996 Form 1040, along with supporting forms, statements and schedules, an accurate copy of which is appended as Government Exhibit 36.

n. On September 9, 2002, the IRS abated $127,356 in 1996 income tax on account of the 1996 Form 1040 (Government Exhibit 36) that Hanks had submitted on May 1, 2002.

o. On March 22, 2005, the IRS issued a notice of deficiency relating to the 1996 Form 1040 that Hanks had submitted on May 1, 2002.

p. Government Exhibit 37 is an accurate copy of the notice of deficiency described in the foregoing paragraph.

q. The March 22, 2005 notice of deficiency proposed an increase of 1996 income tax in the amount of $45,944, attributable principally to the proposed addition of $132,447 to income on account of incentive stock options that Hanks had not reported on his Form 1040 for 1996.

r. The $132,447 amount was reported as disqualified stock options in Box 14 of the 1996 Form W-2 that Amgen had prepared for Hanks.

s. Hanks filed a petition with the United States Tax Court on May 26, 2005, challenging the March 22, 2005 notice of deficiency, and Government Exhibit 38 is an accurate copy of the Notification of Receipt of Petition issued by the Tax Court.

t. Government Exhibit 39 is an accurate copy of the Tax Court's decision, dated December 29, 2005, determining a deficiency of 1996 income tax due from Hanks in the amount of $45,944, plus an additional amount for penalty.

u. Consistent with the Tax Court decision, the IRS assessed additional 1996 income tax against Hanks on April 17, 2006, along with appropriate amounts for penalty and accrued interest.

**1997 INCOME TAX**

v. Hanks did not timely file a federal income tax return for the taxable year 1997.

w. The IRS on December 31, 2001, made an assessment against Hanks in the amount of $245,010 for 1997 income tax, $19,727.55, as a penalty for late filing, $51,508.80, as a penalty for failure to pay tax, $17,152.19, as a penalty for failure to pay estimated tax, and $97,895.90, in interest accrued to that date.

x. Government Exhibit 42 is an accurate copy of the notice of deficiency for the taxable years 1994, 1997, 1998, and 1999, issued to Hanks on August 17, 2001.

z. In 2002, Hanks submitted to the IRS a 1997 Form 1040, along with supporting forms, statements and schedules, an accurate copy of which is appended as Government Exhibit 40.

aa. Hanks did not report any income from incentive stock options on the Form 1040 described in the foregoing paragraph.

bb. The IRS selected Hanks' 1997 federal income tax return for examination and as a result of the audit allowed for some basis in the incentive stock options that Hanks received, reducing the amount of stock-option income from $566,309 to $324,166, and re-characterized the income as ordinary income rather than capital gain.

cc. On February 16, 2004, the IRS abated $141,250 in 1997 income tax previously assessed against Hanks.

dd. On December 5, 1997 the Circuit Court for the Fourth Judicial Circuit, St. Johns County Florida entered a Consent Final Judgment for Dissolution of Marriage between Donald F. Hanks and his wife Alice B. Hanks. Pursuant to paragraph 10 (b) "Lump Sum Alimony" Donald F. Hanks was obligated to pay and did in fact pay the sum of $200,000.00 to Alice B. Hanks. The "lump sum alimony" payment was not deducted by Donald F. Hanks in his 2002 1997 Form 1040.

**1999 INCOME TAX**

ee. Hank did not timely file a federal income tax return for the taxable year 1999.

ff. The IRS on December 31, 2001, made an assessment against Hanks in the amount of $52,804 for 1999 income tax, $7,966.57, as a penalty for late filing, $3,717.73, as a penalty for failure to pay tax, $187.28, as a penalty for failure to pay estimated tax, and $6,584.95, in interest accrued to that date.

gg. On May 1, 2002, Hanks submitted to the IRS a 1999 Form 1040, along with supporting forms, statements and schedules, an accurate copy of which is Government Exhibit 44.

hh. The IRS accepted the 1999 federal income tax return that Hanks submitted on May 1, 2002, and on October 21, 2002, abated $31,509 in 1999 tax (along with corresponding amounts of penalties an interest) to conform with the amount of tax reported on that return, namely $21,298.

ii. On Form 4797 which accompanied the 1999 tax return Donald F. Hanks reported gain from the sale of property in the amount $26,862.00 based upon on a sale of an interest in a Condominium for $28,500.00 subtracting cost or other basis in expense of sale in the amount of $1,638.00.

**2000 INCOME TAX**

jj. Hanks did not timely file a federal income tax return for the taxable year 2000.

kk. On May 1, 2002, Hanks filed a delinquent Form 1040, with supporting forms, statement and schedules for the taxable year 2000, and Government Exhibit 45 is an accurate copy of that return and supporting material.

ll. The IRS examined Hanks' 2000 federal income tax return, and determined a tax deficiency in the amount of $51,004, in part attributable, according to the IRS, to $153,156 in unreported disqualified stock options.

mm. On February 16, 2004, the IRS assessed against Hanks $51,004 in 2000 income tax, $11,312.25, as a penalty for late filing, $10,200.80, as an accuracy-related penalty, and $12,374.12 for interest accrued to that date.

**2003 INCOME TAX**

nn. On January 3, 2005, Hanks filed a 2003 Form 1040, along with supporting forms statement and schedules, an accurate copy of which is appended as Government Exhibit 46.

oo. The IRS audited Hanks' 2003 federal income tax return.

pp. Government Exhibit 49 is a copy of a notice of deficiency the IRS contends was issued by the IRS to Hanks on August 21, 2007, relating to his 2003 and 2005 federal income tax liabilities.

qq. Hanks did not petition the Tax Court to redetermine the deficiency set forth in the notice of deficiency referred to in the foregoing paragraph.

rr. The income tax examination changes with respect to the 2003 year included a disallowance of itemized deductions in the amount of $60,017.00.

ss. On February 4, 2008, the IRS assessed against Hanks $37,965 in 2003 income tax, $13,042.80, as a penalty for late filing, and $7,579.00, as an accuracy-related penalty.

**2005 INCOME TAX**

tt. Hanks timely filed his 2005 federal income tax return on October 15, 2006, and Government Exhibit 48 is an accurate copy of that return.

uu. The IRS audited Hanks' 2005 federal income tax return, and Government Exhibit 49 is a copy of a notice of deficiency the IRS contends was issued by the IRS to Hanks on August 21, 2007, relating to his 2003 and 2005 federal income tax liabilities.

vv. The income tax examination changes with respect to the year 2005 included a denial of itemized deductions in the amount of $79,176.00.

ww. Hanks did not petition the Tax Court to redetermine the deficiency set forth in the notice of deficiency referred to in the foregoing paragraph.

xx. The income tax examination changes with respect to the year 2005 included an additional capital gain in the amount of $136,858.00 related to the sale of stock.

yy. On February 4, 2008, the IRS assessed against Hanks $73,707 in 2005 income tax, $14,741.40, as an accuracy-related penalty, and $12,819.00, in interest accrued to that date.

## THE REAL PROPERTY

zz. Hanks' residence is located at 1188 Ponte Vedra Boulevard, Ponte Vedra, Florida ("1188 Ponte Vedra Blvd."), within this judicial district and division. The real property consists of two adjoining lots.

aaa. Donald F. Hanks and Alice B. Hanks divorced and a Consent Final Judgment for Dissolution of Marriage was entered on December 5, 1997, by the Circuit Court, Fourth Judicial Circuit, in and for St. Johns County, Florida. The Consent Final Judgment for Dissolution of Marriage was recorded in the real property records of St. Johns County, Florida on December 8, 1997, and Government Exhibit 24 is an accurate copy of that document. By the terms of the Consent Final Judgment for Dissolution of Marriage, Alice B. Hanks conveyed her interest in 1188 Ponte Vedra Blvd. to Hanks. Donald Hanks now is the sole titled owner of 1188 Ponte Vedra Blvd. and claims homestead status at this location.

bbb. By warranty deed dated September 8, 1978, and recorded on September 20, 1978, the defendant Donald F. Hanks and his then-wife Phyrne Hanks acquired title to 202-2 Vista Lagoon Court ("202-2 Vista Lagoon Court"), the legal description of which is set forth in Government Exhibit 25. Government Exhibit 25 is an accurate copy of that deed.

ccc. The defendant Donald F. Hanks and Phyrne Hanks divorced, and by quit-claim deed dated April 1, 1989, and recorded April 21, 1989, an accurate copy of which is Government Exhibit 26, Donald F. Hanks acquired sole title to 202-2 Vista Lagoon Court.

ddd. By quitclaim deed dated October 30, 2007, and recorded November 8, 2007, an accurate copy of which is Government Exhibit 31, the defendant Donald F. Hanks purported to transfer 202-2 Vista Lagoon Court to himself and the defendant Jennifer Spangler Arnstein as joint tenants with right of survivorship.

eee. The defendant Villa Del Mar Homeowners Association, also known as Villa Del Mar Cluster Homes Inc., filed an answer in the case asserting a lien interest in 202-2 Vista Lagoon Court, but has not otherwise participated in this action and did not participate in the preparation of this pretrial statement.

fff. By warranty deed dated March 2, 1984, and recorded on March 15, 1984, the defendant Donald F. Hanks and his then-wife Phyrne Hanks acquired title to 2539 Dauphine Court East (2539 Dauphine Court East"), the legal description of which is set forth in Government Exhibit 29. Government Exhibit 29 is an accurate copy of that deed.

ggg. Phyrne Hanks transferred her interest in 2539 Dauphine Court East to Donald F. Hanks by quitclaim deed dated April 1, 1985, and recorded on August 21, 1989, and Government Exhibit 30 is accurate copy of that deed.

www. By quitclaim deed dated October 30, 2007, and recorded November 8, 2007, an accurate copy of which is Government Exhibit 31, the defendant Donald F. Hanks purported to transfer 2539 Dauphine Court East to himself and the defendant Alice B. Hanks as joint tenants with right of survivorship.

10. A CONCISE STATEMENT OF APPLICABLE PRINCIPLES OF LAW ON WHICH THERE IS AGREEMENT

a. The Internal Revenue Service, as a delegate of the Secretary of the Treasury, is authorized to assess against taxpayers all taxes shown on a filed return.

b. The Internal Revenue Service is generally required to issue a notice of deficiency to the taxpayer's last known address before an assessment of a deficiency in the tax shown on the return can be made. This restriction does not apply to an assessment arising out of mathematical or clerical errors appearing on the return.

c. If a taxpayer and the IRS enter into an installment agreement, IRS Chief Counsel may not refer the tax periods that are the subject of the installment agreement for litigation unless notice of the termination of the installment agreement is given.

11. A CONCISE STATEMENT OF THOSE ISSUES OF FACT WHICH REMAIN TO BE LITIGATED

a. Whether Donald Hanks is indebted to the United States in the amounts claimed.

b. Whether the federal tax liens may be foreclosed upon the three parcels of real property at issue in the action, and whether those properties may be sold and the proceeds applied to Donald Hanks' tax liabilities.

c. Which parties may participate in the distribution of the sale proceeds.

d. Whether the IRS properly and timely sent the required "Notice and Demand" for payment which serves as a prerequisite to the creation of a Federal Tax Lien.

e. Whether Defendant Donald F. Hanks is entitled to an additional alimony deduction with the amount of $200,000.00 for the year 1997.

f. Whether Defendant Donald F. Hanks is entitled to a setoff for damages, costs, and other expenses related to Plaintiff's alleged unlawful collection activity due to levies occurring after an Installment Payment Agreement dated July 2, 2002.

g. Whether the Court under 26 U.S.C. 7403 should exercise its discretion to defer or deny foreclosure against Jennifer Spangler Arnstein's legal and equitable claims to the Donald F. Hanks homestead.

h. Whether the IRS properly terminated an Installment Payment Agreement dated July 2, 2002 for the year 1994, 1995, and 1999 and if not, whether this action is time barred.

i. Whether the IRS properly and timely mailed Notices of Deficiency with respect to the 2003 and 2005 tax years.

12. A CONCISE STATEMENT OF THOSE ISSUES OF LAW WHICH REMAIN FOR DETERMINATION

a. Whether Donald Hanks is indebted to the United States in the amounts claimed.

b. Whether the federal tax liens may be foreclosed upon the three parcels of real property at issue in the action, and whether those properties may be sold and the proceeds applied to Donald Hanks' tax liabilities.

c. Which parties may participate in the distribution of the sale proceeds.

d. Whether the IRS properly and timely sent the required "Notice and Demand" for payment which serves as a prerequisite to the creation of a Federal Tax Lien.

e. Whether Defendant Donald F. Hanks is entitled to an additional alimony deduction with the amount of $200,000.00 for the year 1997.

f. Whether Defendant Donald F. Hanks is entitled to a setoff for damages, costs, and other expenses related to Plaintiff's unlawful collection activity due to levies occurring after an Installment Payment Agreement dated July 2, 2002.

g. Whether the Court under 26 U.S.C. 7403 should exercise its discretion to defer or deny foreclosure against Jennifer Spangler Arnstein's legal and equitable claims to the Donald F. Hanks homestead.

h. Whether the IRS properly terminated an Installment Payment Agreement dated July 2, 2002 for the year 1994, 1995, and 1999 and if not, whether this action is time barred.

i. Whether the IRS properly and timely mailed Notices of Deficiency with respect to the 2003 and 2005 tax years.

13. A CONCISE STATEMENT AS TO ANY DISAGREEMENT AS TO THE APPLICATION OF THE FEDERAL RULES OF EVIDENCE OR THE FEDERAL RULES OF CIVIL PROCEDURE

The United States asserts that Donald Hanks waived any right of setoff by failing to raise it in his answer, and this Court lacks jurisdiction to consider that claim in any event as the United States has not waived its sovereign immunity under 26 U.S.C. § 7433.

14. A LIST OF ALL MOTIONS OR MATTERS WHICH REQUIRE ACTION BY THE COURT

(a) United States' motion for partial summary judgment is pending with respect to Donald Hanks' liabilities for the 1996 and 1999 taxable years, and with respect to foreclosing the corresponding liens against 1188 Ponte Vedra Blvd.

(b) United States' motion for entry of default judgment against Amsouth Retirement Services, Inc., formerly known as Retirement Accounts, Inc., Trustee

(c) Unopposed Motion by United States for Entry of Judgment against Alice B. Hanks

PHILIP DOYLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Ben Franklin Station
Washington, DC 20004
Tel.: (202) 514-9673
Fax: (202) 514-9868
philip.a.doyle@usdoj.gov
Counsel for United States of America

/s/ David B. Ferebee
DAVID B. FEREBEE
Florida Bar No. 347620
David B. Ferebee, P.A.
503 East Monroe Street
Jacksonville, Florida 32202
Tel.: (904) 358-7001
Fax: (904) 353-2756
ferebeeatlaw@bellsouth.net
Counsel for Donald F. Hanks and
Jennifer Spangler Arnstein

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

DONALD F. HANKS;
JENNIFER SPANGLER ARNSTEIN;
ALICE B. HANKS;
DENNIS W. HOLLINGSWORTH,
Tax Collector of St. Johns County, Florida;
ROTHERWICK TRADE VENTURES;
AMSOUTH RETIREMENT SERVICES, INC.,
formerly known as RETIREMENT
ACCOUNTS, INC., Trustee;
VILLA DEL MAR HOMEOWNERS
ASSOCIATION, also known as
VILLA DEL MAR CLUSTER HOMES, INC.,

Defendants.

Civil No. 3:09-cv-00101-HES-HTS

**GOVERNMENT'S TRIAL EXHIBITS**

| Exhibit No. | Description | Objections |
|---|---|---|
| 1 | TXMOD transcript 1995 | |
| 2 | INST computation 1995 | |
| 3 | TXMOD transcript 1996 | |
| 4 | INST computation 1996 | |
| 5 | TXMOD transcript 1997 | |
| 6 | INST computation 1997 | |
| 7 | TXMOD transcript 1999 | |
| 8 | INST computation 1999 | |
| 9 | TXMOD transcript 2000 | |
| 10 | INST computation 2000 | |
| 11 | TXMOD transcript 2003 | |
| 12 | INST computation 2003 | |
| 13 | TXMOD transcript 2005 | |
| 14 | INST computation 2005 | |
| 15 | Notice of Federal Tax Lien 4/13/00 | |
| 16 | Notice of Federal Tax Lien 9/30/05 | |

| | |
|---|---|
| 17 | Notice of Federal Tax Lien 1/30/07 |
| 18 | Notice of Federal Tax Lien 3/4/08 |
| 19 | Warranty Deed 2/3/89 |
| 20 | Warranty Deed 2/9/89 |
| 21 | Quit-Claim Deed 1/9/90 |
| 22 | Warranty Deed 1/5/90 |
| 23 | Quit-Claim Deed 8/8/90 |
| 24 | Consent Final Judgment for Dissolution of Marriage |
| 25 | Warranty Deed 9/8/78 |
| 26 | Quit-Claim Deed 4/1/85 [202-2 Vista Lagoon Ct] |
| 27 | Warranty Deed 9/8/78 [duplicate of No.25] |
| 28 | Quitclaim Deed 10/30/07 [202-2 Vista Lagoon Ct] |
| 29 | Warranty Deed 3/2/84 |
| 30 | Quit-Claim Deed 4/1/85 [2539 Dauphine Court East] |
| 31 | Quitclaim Deed 10/30/07 [2539 Dauphine Court East] |
| 32 | Promissory Note 7/7/07 |
| 33 | 1995 Form 1040 signed 5/1/02 |
| 34 | Examining Officer's Activity Record |
| 35 | 1995 Form 1040 signed 8/8/04 |
| 36 | 1996 Form 1040 signed 5/1/02 |
| 37 | Notice of Deficiency 3/22/05 |
| 38 | Notification of Receipt of Petition |
| 39 | Decision, United States Tax Court |
| 40 | 1997 Form 1040 signed 5/1/02 |
| 41 | IRPTRN transcripts 1997 |
| 42 | Notice of Deficiency 8/17/01 |
| 43 | Form 4549 signed 10/31/03 |
| 44 | 1999 Form 1040 signed 5/1/02 |
| 45 | 2000 Form 1040 signed 5/1/02 |
| 46 | 2003 Form 1040 signed 12/29/04 |
| 47 | IRPTRN transcripts 2003 |
| 48 | 2005 Form 1040 signed 10/15/06 |
| 49 | Notice of Deficiency 8/21/07 |
| 50 | Certified mail log 8/17/01 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD F. HANKS;<br>JENNIFER SPANGLER ARNSTEIN;<br>ALICE B. HANKS;<br>DENNIS W. HOLLINGSWORTH,<br>Tax Collector of St. Johns County, Florida;<br>ROTHERWICK TRADE VENTURES;<br>AMSOUTH RETIREMENT SERVICES, INC.,<br>formerly known as RETIREMENT<br>ACCOUNTS, INC., Trustee;<br>VILLA DEL MAR HOMEOWNERS<br>ASSOCIATION, also known as<br>VILLA DEL MAR CLUSTER HOMES, INC.,<br><br>Defendants. | ) Civil No. 3:09-cv-00101-HES-HTS |

**DEFENDANTS DONALD F. HANKS AND JENNIFER SPANGLER ARNSTEIN'S TRIAL EXHIBITS**

| Exhibit No. | Description | Objections |
|---|---|---|
| 1. | Composite Receipts, Logs -Bate Nos "Deds 1-336" | |
| 2. | QDRO - 1997 | |
| 3. | IRS Form 523 | |
| 4. | 1997 Tax Return Computation | |
| 5. | 1999 Tax Return Computation | |
| 6. | 2003 Tax Return Computation | |
| 7. | 2005 Tax Return Computation | |
| 8. | Deposition - Slate | |
| 9. | Deposition - Tidwell | |
| 10. | Deposition - Combs | |
| 11. | Deposition - Altieri | |
| 12. | Mortgage - Donald F. Hanks and Jeanette R. Hanks | |
| 13. | Plaintiff's Response to Request for Production dated | |

| | | |
|---|---|---|
| | May 26, 2010 | |
| 14. | December 13, 2010 Damage Claim by Donald F. Hanks to IRS District Director | Relevance |
| 15. | Alimony Check 1997 ($200,000.00) | |
| 16. | IRS Form 4797 and 4562 1994 Tax Return | |
| 17. | 2003 Amgen Statement of Taxable Income | |
| 18. | Slate Deposition Exhibits 1-8 | |
| 19. | Deed from Donald F. Hanks and Jeanette R. Hanks dated January 9, 1991 | |
| 20. | Deed to Donald F. Hanks and Jeanette R. Hanks dated June 9, 1983 | |
| 21. | ICS History October 29, 2005 - October 27, 2006 | |
| 22. | Exhibit 12 - Tidwell Deposition | |
| 23. | Disability Letter | |